**JACOBSON'S LIFETIME BUILDINGS, Inc., a corporation, et al., Plaintiffs in Error,**

v.

**CITY OF TULSA, a municipal corporation, Defendant in Error.**

No. 37292.

Supreme Court of Oklahoma.

Dec. 2, 1958.

Rehearing Denied Dec. 23, 1958.

Covington, Donovan & Gibbon, Tulsa, for plaintiff in error.

Darven L. Brown, City Atty., Luther P. Lane, Henry Kolbus, Wilton W. Works, Charles E. Norman and Finis Smith, Asst. City Attys., Tulsa, for defendant in error.

PER CURIAM.

Plaintiff, Jacobson's Lifetime Buildings, Inc., brought this action to recover its damage arising out of an alleged breach of contract by the defendant, the City of Tulsa, a municipal corporation. The parties appear here in the same order as in the trial court, and we shall continue to refer to them by their trial court designation.

Plaintiff's action is predicated on a contract between it and the defendant which was the culmination of a series of contracts between these parties arising out of the development of property by plaintiff for home sites. The property being developed by plaintiff was near to but not within the city limits of Tulsa. It was not serviced by the city sewer system. Several

separate but adjacent tracts of property were involved in this series of contracts, but the situation concerning sewers was the same in each case, that is, this general area was approximately one mile and over a hill from the nearest city sewer main. To secure the benefits of city sewer facilities for the developments, it was necessary to construct and operate a sewage lift and a force main line to convey the sewage from this area to the city system. The initial agreement between these parties authorized plaintiff to connect to the city system the force line and sewage lift system to be built according to city specifications by plaintiff without cost to the city. This facility was to be operated by plaintiff until such time as the area was annexed to the city or until the city serviced the area with gravity flow sewage lines whereupon the plaintiff's system was to become city property. Plaintiff also was to provide the necessary easements for this purpose which he agreed to assign to the city when the system became its property. As a part of this contract the city regulations concerning sewers were to apply to the development and the city was authorized to make its customary sewer service charge against the home owners; however, the city likewise agreed not to permit anyone to connect to the plaintiff's sewer system without plaintiff's permission. This last provision was to enable plaintiff to make a charge against other property owners or developers to secure reimbursement for the extra expense involved in constructing and operating the sewage lift and force line. Due to expansion of residential development in this general area by plaintiff and others, a subsequent agreement was executed by plaintiff and defendant in which the defendant, at its insistence, was given authority to permit connections to the sewer without plaintiff's permission. When plaintiff later sought to connect another of its developments to the system it discovered that the city had given permission to several other developers to connect their tracts and that the sewer system would not handle the additional load of plaintiff's development. Plaintiff's President was of the opinion that this was a breach of faith by the city concerning a "gentlemen's agreement" relating to additional connections, and he immediately commenced negotiations with the city to secure sewage service for plaintiff's development. The specific contract now involved was thereafter executed. By virtue of this agreement, which contained substantially the same general provisions as the former contracts, the initial sewage lift and force line were turned over to the city and plaintiff, with some financial help from other developers, constructed a second and parallel system which he was to operate to service his new developments. This system, too, was to become the defendant's property upon the occurrence of either of the two contingencies contained in the initial contract and the city was to supervise its construction and charge its regular sewage service fee of the home owners, but the agreement also specifically provided that no connections would be permitted by the defendant without the plaintiff's prior approval. Neither of the plaintiff's systems appear to have been placed on city streets or city property except at the point of connection to the city sewer main.

Notwithstanding its specific agreement, the city subsequently permitted another developer to connect his sewer line, servicing ninety-one new home sites, to plaintiff's second sewer system. This action followed. The action initially was one against the other developer, but that defendant brought in the city as a defendant based upon their agreement and the plaintiff thereafter amended its petition and proceeded against the city alone for damages for breach of contract. The trial of the action was to the court. Defendant demurred to plaintiff's evidence and the demurrer was overruled, whereupon defendant elected to offer no evidence. Judgment was entered for plaintiff for $9,100 based upon plaintiff's evidence of a charge to others of $100 per lot for permission to connect to the sewer system. Plaintiff did not plead or prove that the city had adequate current revenue to pay this claim and

the court's judgment, of course, does not recite that adequate resources are available. The court subsequently granted defendant a new trial assigning as its reason the conclusion that "the contracts involved were illegal and void * * *." The trial court appears to have so acted upon its construction of our opinion in City of Shawnee v. Thompson, Okl., 275 P.2d 323.

We are of the opinion that the trial court was correct in granting defendant a new trial, but we do not agree that City of Shawnee v. Thompson, supra, is applicable. It is not contrary to public policy, as defendant claims, for there to be private ownership of sewer systems connected to a public sewer system. Our statutes expressly recognize the legality of such an arrangement, 11 O.S.1951 § 275. And we also take it to be beyond dispute that a municipal corporation may make contracts relating to the operation by it of sewers as well as it may contract for any other purpose within its legitimate area of concern, 11 O.S.1951 § 563, so long as express constitutional and statutory prohibitions are observed. Ruth v. Oklahoma City, 143 Okl. 62, 287 P. 406; Selected Investments Corp. v. City of Lawton, Okl., 304 P.2d 967. See too, Dail v. Adams Bldg, Corp., 200 Okl. 451, 195 P.2d 755. The sewer facilities constructed by this plaintiff were owned by it, as its contract with the city expressly noted, and the city was to become the owner and operator only upon the occurrence of certain stated contingencies. This sewer was not constructed upon city streets as was the case in City of Shawnee v. Thompson, supra. These facts are sufficient to distinguish that case from this, and this contract is not unenforceable for the reasons stated in that opinion.

But the foregoing observations do not authorize a reversal of this order. The city has on all appropriate occasions in these proceedings made and preserved its record on the failure of plaintiff to plead or prove that the judgment sought is within the limits of available funds. There is no evidence that the municipality's current fiscal resources justify the entry of judgment against it on a claim arising out of contract. This being an action on contract, as plaintiff admits, compliance with Sections 361–363, 62 O.S.1951, was mandatory. Oklahoma City v. Green Construction Co., 184 Okl. 98, 84 P.2d 623; Mid-Continent Pipe Line Co. v. Seminole County Excise Board, 194 Okl. 40, 146 P.2d 996. The purpose of these sections of our statutes was to ensure compliance with our constitutional provisions concerning public expenditures, Sec. 26, Art. 10, and we may not ignore this plain expression of legislative intent. A judgment entered contrary to the provisions of Sec. 362, 62 O.S. 1951, "shall be void and of no effect." Sec. 363, 62 O.S.1951. For this reason, which is apparent on the face of this record, the trial court was correct in its conclusion concerning the validity of plaintiff's claim, Sec. 479, 62 O.S.1951, and properly granted defendant a new trial.

Where the reason assigned for granting a new trial requires, this court will examine the record, Benedict Bros. Const. Co. v. Davoult, Okl., 266 P.2d 960, but where the record fails to disclose an abuse of discretion, arbitrary action or error with respect to some simple and unmixed question of law, this court will not disturb an order which grants a new trial, Stillwell v. Johnson, Okl., 272 P.2d 365. Our examination of the record in this case fails to disclose either of those factors.

Affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON and CARLILE, JJ., concur.

WILLIAMS, J., concurs in results.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.